FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 JUN 13 A 9: 15

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | | |
|---|---|---|
| CYNTHIA FAIN | * | |
| Plaintiff, | * | Case No.: GJH-17-2697 |
| | * | |
| v. | * | |
| | * | |
| BAE SYSTEMS TECHNOLOGY | * | |
| SOLUTIONS & SERVICES INC.[1] | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Cynthia Fain brings this action against her former employer, Defendant BAE

Systems Technology Solutions & Services Inc. ("BAE"), alleging gender-based discrimination in

violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and intentional infliction of

emotional distress ("IIED"). Now pending before the Court is Defendant's Motion to Dismiss.

ECF No. 7. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons,

Defendant's Motion to Dismiss is granted.

## I.    BACKGROUND[2]

Plaintiff began working for Defendant on April 7, 2008 as a quality auditor and, in

October 2013, was selected to fill the newly-created position of Talent Manager, working under

Orania Colombo in the Business Operations Unit. ECF No. 1 ¶ 11. Plaintiff was universally

regarded as an exemplary employee, consistently received stellar performance reviews, and was

awarded the BAE Chairman's Silver Award as a result of her work as Talent Manager. *Id.* ¶¶ 13,

---

[1] Defendant indicated that it was incorrectly sued as "BAE Systems, Inc." ECF No. 7-1. The docket will be updated accordingly.
[2] The facts are taken from the Complaint and assumed to be true.

1

14. While working under Colombo, Plaintiff frequently, and with Colombo's acknowledgement and approval, worked from home using physical copies of necessary documents instead of logging into BAE's remote network because of the slow speed of the network connection. *Id.* ¶¶ 16, 17.

Colombo announced her retirement from BAE in November 2015, *id.* ¶ 18, and Jeffery King took over as manager of the Business Operations Unit on January 7, 2016. *Id.* ¶ 19. Plaintiff alleges that King took a number of actions indicative of his bias against female employees, which included, socializing with male members of the team to the exclusion of the remaining female members, *id.* ¶ 20; excluding, dismissing, belittling, or otherwise ignoring the female members, *id.* ¶ 22; and ceasing regular staff meetings and only sharing work-related information with the male members of the Business Operations Unit to the exclusion of the female members, *id.* ¶ 23.

On February 2, 2016, Plaintiff received an email form Jennifer Nestor of the Ethics and Business Conduct Unit instructing her to report to a meeting on the morning of February 4. *Id.* ¶ 25. Plaintiff asked King about the purpose of the meeting, and he responded that "even if he knew, he would not have told her." *Id.* During the February 4 meeting, "in an interrogation-style setting," Nestor and Janel Wilson from Human Resources questioned whether Plaintiff signed into the BAE remote network when working from home. *Id.* ¶ 26. Plaintiff responded that when working on a presentation or research, she did not sign into the network, but that all work had been approved by Colombo. *Id.*; *see also id.* ¶¶ 16, 17. Plaintiff alleges that during and prior to this meeting, she notified BAE management of the need for training on time keeping. *Id.* ¶ 26. Plaintiff alleges that she left that meeting "with feelings of fear, humiliation, and extreme anxiety." *Id.*

On February 7, Plaintiff notified King that she would be taking a sick day on the following day. On February 8, Plaintiff received a "harassing" call from King and Wilson insisting that she report to work. *Id.* ¶ 27. In response, Plaintiff advised King that she had a doctor's appointment and needed blood work and would not be coming in. *Id.* While at the doctor's appointment, King called a second time and left a voicemail message notifying Plaintiff that her access to the building had been revoked. *Id.* ¶ 28. While Plaintiff characterizes her departure from BAE as a termination, she states that "[n]o BAE employee ever provided [her] with any official notice of termination." *Id.* ¶ 28.

Plaintiff alleges that she suffers from systemic lupus erythematosus, which can result in flare-ups caused by extreme stress. *Id.* ¶ 29. Plaintiff alleges that King's treatment of her, including the "two harassing telephone calls on February 8, 2016" caused a flare-up of her condition and amplified its effects, which included rashes, mouth sores, and severe muscle fatigue." *Id.* ¶¶ 29, 30. In her Complaint, Plaintiff notes that "the purported reason for her termination was alleged inconsistencies in her time card" but alleges that was a pretext for the true reason for her firing—gender discrimination. *Id.* ¶¶ 31, 32.

## II. STANDARD OF REVIEW

To state a claim that survives a Rule 12(b)(6) motion to dismiss, a complaint, relying on only well-pled factual allegations, must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has crossed "the line from conceivable to plausible," the court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at

679–80. When performing this inquiry, the court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

## III.  DISCUSSION

### A. Title VII

Title VII makes it illegal for an employer "to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The parties dispute whether the Complaint contains sufficient factual content to create a plausible inference that Plaintiff was fired because of her sex. *See* ECF No. 7-1 at 5.[3]

Plaintiffs may establish a Title VII claim through two avenues of proof. *See Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015). First, a plaintiff may demonstrate "through direct or circumstantial evidence that his race [or sex] was a motivating factor in the employer's adverse employment action." *Id.* (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). Alternatively, if the plaintiff cannot provide direct or circumstantial evidence, she may proceed under the familiar burden-

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

shifting pretext framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4]

Under this approach, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *See id.* at 802; *see also Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The plaintiff must then demonstrate that the legitimate reasons offered by the defendant are but a pretext for discrimination, thus creating an inference that the defendant acted with discriminatory intent. *See id.* at 143.[5]

Plaintiffs filing suit under Title VII more commonly utilize the pretext framework. *See Fuller v. Phipps*, 67 F.3d 1137, 1141 (4th Cir. 1995), *abrogated on other grounds, Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *see also Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (noting that the pretext framework was established to allow a plaintiff to advance an inference of discrimination because direct evidence of intentional discrimination is hard to come by). But a plaintiff is not required to establish a prima facie case of discrimination to survive a motion to dismiss because "the prima facie case . . . is an evidentiary standard, not a pleading requirement." *See Mcleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015) (citing *Swierkiewicz v. Soreman N. A.*, 534 U.S. 506, 510 (2002)). As the Supreme Court recognized in *Swierkiewicz*,

---

[4] In bringing a Title VII claim, a plaintiff need not, at the outset, elect which framework to pursue. Instead, the district judge determines whether the plaintiff has satisfied either approach. *See Fuller v. Phipps*, 67 F.3d 1137, 1142 n.2 (4th Cir. 1995), *abrogated on other grounds, Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *see also Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 n.4 (4th Cir. 2005) ("In the event that a plaintiff has direct evidence of discrimination or simply prefers to proceed without the benefit of the burden-shifting framework, she is under no obligation to make out a prima facie case.").

[5] Defendant's Motion sets forth arguments that could be construed as attacking Plaintiff's Complaint under either framework. Specifically, Defendant argues that Plaintiff has not adequately alleged that her termination for cause was a pretext for unlawful discrimination. As set forth above, Plaintiff has the evidentiary burden to establish a discriminatory pretext only *after* Defendant establishes that her termination was legitimate.

requiring a plaintiff to plead a prima facie case would amount to a "heightened pleading standard" that would conflict with Federal Rule of Civil Procedure 8(a)(2) and would not be appropriate in employment discrimination cases when a plaintiff is able to produce direct evidence of discrimination but may not be able to prove all elements of a prima facie claim. *Id.* (citing *Swierkiewcz*, 534 U.S. at 511, 512). If the plaintiff does not plead the elements of a prima facie case, the ordinary rules for assessing the sufficiency of a complaint still apply and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

Here, Plaintiff alleges that King had an animus against female employees and merely presumes that this animus was the motivating factor behind Defendant's decision to terminate her. Plaintiff does not allege any direct evidence that her termination was at all influenced by her gender. Further, Plaintiff's alleged circumstantial evidence merely amounts to an inference that King favored his male subordinates over his female subordinates, which is insufficient to state a claim of gender-based animus in his decision to terminate her. The allegations regarding King's behavior are primarily stated in generalities, *see* ECF No. 1 ¶¶ 20, 22, 23, but even to the extent that there are specific allegations of discriminatory attitude, these allegations are not tied to Plaintiff's alleged termination. *See Fuller*, 67 F.3d at 1142 (noting that direct evidence of discrimination must not only reflect a discriminatory attitude, but must also bear directly on the contested employment decision).

As Plaintiff has not pleaded direct or circumstantial evidence proving Defendant acted with discriminatory intent, her claim may only proceed if she can show a prima facie case of discrimination under *McDonnell Douglas*. A plaintiff claiming discharge on the basis of gender

must demonstrate: "(1) that she is a member of a protected class; (2) that she was performing the job satisfactorily; (3) that she was discharged or constructively discharged; and (4) that she was replaced by someone with comparable qualifications outside the protected class or that the position remained open to similarly qualified applicants after her discharge." *Riley v. Technical and Management Services Corp., Inc.*, 872 F. Supp. 1454, 1460–61 (D. Md. 1995).

Here, Plaintiff has not sufficiently alleged the third element. Plaintiff's Complaint uses the word "termination" throughout but affirmatively states that Defendant never provided her with an official notice of termination. ECF No. 1 ¶ 28. Therefore, the Complaint does not allege that Plaintiff was discharged; rather, the Complaint alleges that King terminated her access to the building and implies that Plaintiff was *constructively* discharged. ECF No. 1 ¶ 28. Plaintiff argues that "even assuming *arguendo* that Plaintiff did resign following the voicemail, that resignation would clearly fall within the Supreme Court's jurisprudence governing constructive discharge cases under the Civil Rights Act." *See* ECF No. 8-1 at 4. However, the telephone calls precipitating Plaintiff's possible resignation do not constitute a constructive discharge.

As set forth in *Green v. Brennan*, 136 S.Ct. 1769, 1777 (2016), to bring a claim of constructive discharge, a plaintiff must prove 1) that she was discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign, *i.e.*, that the working conditions were objectively intolerable, and 2) that she actually resigned. First, Plaintiff alleges that King insisted she come in on a sick day, and when she refused, left a voicemail message "notifying her that her access to the building had been revoked." ECF No. 1 ¶ 28. Courts have previously determined that similar interactions, without more, do not amount to constructive discharge. *See Lacasse v. Didlake, Inc.*, 712 F. App'x 231, 239 (4th Cir. 2018) (voluntary resignation following a series of counseling sessions and

suspension due to plaintiff's inappropriate workplace behavior was insufficient to support a claim of constructive discharge); *Young v. Shore Health System, Inc.*, 305 F. Supp. 2d 551, 559 n.1 (D. Md. 2003) (indefinite suspension without pay does not establish intolerable working condition when employee resigned assuming that suspension and follow-on performance review would lead to her ultimate termination). While Plaintiff places emphasis on her lupus flair-up to suggest that King's conduct was unreasonable, the doctrine of constructive discharge applies an objective standard, and Plaintiff's specific medical condition, even if caused by King's conduct, is immaterial. Second, Plaintiff never alleges that she ultimately resigned, leaving the simple fact of when and how she ended her employment with Defendant open to speculation.[6] Therefore, Plaintiff has failed to plead sufficient facts to suggest that her termination was the result of gender discrimination.[7]

### B. Intentional Infliction of Emotional Distress

Plaintiff alleges that King's discriminatory conduct and telephone calls made on February 8, 2016 caused a flare-up of her pre-existing chronic medical condition, exacerbating those physical symptoms "in addition to the severe emotional distressed [sic] that accompanied the physical symptoms." ECF No. 1 ¶¶ 29, 51. Nonetheless, a review of the elements of a claim for IIED makes clear that Plaintiff's claim is meritless.

---

[6] Furthermore, Plaintiff likely cannot meet the fourth element as she only conclusively alleges that "Plaintiff, Plaintiff's supervisor Oriana Colombo, and Ashley Kalavritinos were all replaced by male hires" without providing any additional factual allegations regarding the qualifications of her replacement. ECF No. 1. ¶ 42. Additionally, even if Plaintiff could plead a prima facie case, the Complaint itself provides a legitimate reason for the firing—Plaintiff's failure to keep accurate time records—but only offers a conclusory assertion that it was a pretext for discrimination. *See Hill v. Lockheed Martin Logistics Management, Inc.* 354 F.3d 277, 285 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (under *McDonnell Douglas*, once an employer offers a legitimate reason for an employment action, the plaintiff has the burden to show that the reason was a pretext for discrimination).

[7] Plaintiff also asserts that Defendant openly discriminated against her due to her age, causing her emotional distress. ECF No. 1 ¶ 48. The Court presumes that this statement was inadvertently incorporated into the Complaint and that Plaintiff does not intend to bring a claim of age discrimination.

To state a common law claim for IIED, Plaintiff must allege that: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). In Maryland, an IIED claim is "rarely viable," *Borchers v. Hyrchuk*, 727 A.2d 388, 392 (Md. Ct. Spec. App. 1999), and courts have imposed "liability sparingly and . . . limited the tort to situations where the 'wounds are truly severe and incapable of healing themselves.'" *Lee v. Queen Anne's Cty. Office of Sheriff*, No. RDB-13-672, 2014 WL 476233, at *16 (D. Md. Feb. 5, 2014) (quoting *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 804 (D. Md. 2001)).

To adequately plead the first element of an IIED claim, a plaintiff must allege that the defendant either "desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from his conduct, or acted recklessly in deliberate disregard of a high degree of probability that emotional distress would follow." *Brengle v. Greenbelt Homes, Inc.*, 804 F. Supp. 2d 447, 452 (D. Md. 2011) (quoting *Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 959 (Md. Ct. Spec. App. 1989)). Here, Plaintiff has not pleaded that Defendant acted with the intention of inflicting any distress upon Plaintiff or that Defendant was aware that Plaintiff had a chronic condition that could be exacerbated by stressful situations.

As to the second element, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Washington v. Maynard*, No. GLR-13-3767, 2016 WL 865359, at *11 (D. Md. Mar. 7, 2016) (citing *Harris*, 380 A.2d at 614). "The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Id.* (citing *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057,

1064 (Md. Ct. Spec. App. 1986)). As alleged, King's treatment of Plaintiff was, at worst, rude and unprofessional, exhibiting a bias against female employees, but such behavior is a far cry from the outrageous conduct warranting an IIED claim. *See, e.g., B.N. v. K.K.*, 538 A.2d 1175, 1180 (Md. 1988) (finding that intentional exposure to sexually transmitted disease was outrageous conduct).

Finally, Plaintiff has not pleaded any facts to suggest that her emotional distress was severe. *See Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 804 (D. Md. 2001) (quoting *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Ct. Spec. App. 2000)) (plaintiff must show that he suffered "a severely disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it") (internal quotation omitted). Plaintiff has merely alleged that she suffered severe emotional distress associated with the physical manifestations of her chronic medical condition. Such conclusory statements are insufficient to meet the high burden imposed by the requirement that a plaintiff's emotional distress be severe. *See Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 114–15 (Md. 2000) (upholding dismissal of IIED claim when the plaintiff failed to "state with reasonable certainty the nature, intensity, or duration of the alleged emotional injury"). Therefore, Plaintiff's IIED claim must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 7, shall be granted.

A separate Order follows.[8]


Dated: June 12, 2018

GEORGE J. HAZEL
United States District Judge

---

[8] The Court will dismiss Plaintiff's Title VII claim because she has not adequately alleged facts to demonstrate that she was constructively discharged. However, the claim will be dismissed without prejudice because Plaintiff may be able to add facts to demonstrate that Defendant not only terminated her access to the building on February 8, 2016, but that Defendant in fact terminated her employment. If such facts exist, Plaintiff may seek leave to amend her Complaint. If Plaintiff does not seek leave to amend within fourteen days, her Title VII claim will be dismissed with prejudice and the case will be closed.